Alfred P. Cole and Ruth Pierson Cole v. Commissioner.
Cole v. Commissioner
Docket No. 40197.
United States Tax Court
T.C. Memo 1954-224; 1954 Tax Ct. Memo LEXIS 20; 13 T.C.M. (CCH) 1135; T.C.M. (RIA) 54330; December 17, 1954, Filed *20 Alan E. Gray, Esq., for the petitioners. Earl C. Crouter, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined a deficiency in income tax for the year 1949 against the petitioners in the amount of $2,129.34. The question presented is whether the petitioners are entitled to a bad debt deduction in the amount of $5,850. Findings of Fact The petitioners are husband and wife, and are residents of Encino, California. They filed their joint income tax return for 1949 with the collector of internal revenue at Los Angeles, California. Alfred P. Cole, hereinafter referred to as the petitioner, was born on March 19, 1903. His father was Friend W. Cole and his mother was Elizabeth A. Cole. On May 6, 1922, his father executed his last will and testament, which provided: "First: I direct that there be paid out of my estate Five thousand eight hundred and fifty dollars ($5,850.00) to my son, Alfred Percy Cole, said sum being the balance due him from me on account of dividends paid to me on 3,500 shares of stock of Yellow Pine Mining Company belonging to him while the same stood on the books of the corporation *21 in my name." Paragraph Second provided that the residue and remainder of his estate should go to his wife, for life, and after her death to his sons. Paragraph Third, the last paragraph, provided for the appointment of Elizabeth A. Cole, petitioner's mother, as executrix, to serve without bond. In 1929 or 1930 petitioner's father delivered the will, in a sealed envelope, to his son J. Byron Cole, an older brother of petitioner. At that time he told Byron of the indebtedness to petitioner and that provision had been made in the will for repayment. Petitioner had also been told by his father that the latter had provided in his will for the payment of the indebtedness. The will was first seen by petitioner and his brother after their father's death in 1949 when the envelope in which the will had been sealed was opened. Prior to this reading of the will neither petitioner nor his brother knew the amount of the indebtedness the father had stated he owed. Petitioner had understood that his mother's father, Alfred Williams, had given to petitioner, about 1907 or 1908, 3,500 shares of stock of the Yellow Pine Mining Company and that the stock was held by petitioner's father. Petitioner *22 concluded many years later that the stock was carried in the name of his mother from 1914 to 1922, and that it was then transferred of record to his name. In 1915 or 1916, when the petitioner was about thirteen years of age, his father told him that he wanted to use the dividends paid by the corporation on the stock. Petitioner could not recall the amount that was to be used, nor to what purpose the dividends were to be put. No note or other evidence of indebtedness was given to petitioner, nor was any money ever repaid to him. The amount of dividends paid to petitioner's father by the corporation on petitioner's 3,500 shares of stock is not known. It was petitioner's understanding that the corporation had paid dividends until about 1925, and that before May 2, 1922, his father had received from the corporation the dividends it paid on petitioner's stock. Petitioner received no dividends, paid by the mining company, either from the corporation or from his father prior to 1922. After May 22, 1922, the petitioner received the dividends paid on the stock by the corporation. The record does not reveal the year in which the dividends were received by petitioner or the amount thereof. *23 Petitioner ascertained to his satisfaction that the corporation paid quarterly dividends of four cents a share during 1925. About 1935, the corporation lost its mining property through foreclosure proceedings. Petitioner and his brother Byron supported their mother and father from about 1933 until their respective deaths. The parents lived in a bungalow cottage in West Los Angeles, the rent on the cottage being paid by their sons. The mother died June 17, 1944, and left no estate. The father continued to live in the cottage until his death, on April 19, 1949, at the age of 89 years. Although the father had become almost completely deaf and practically blind, his health had been good until a short time before his death. From the time the sons started contributing to the support of their father, the father owned no real estate and had no other means of support. The father's will was not offered for probate, as there was no estate to probate. Petitioner never made any demand on his father for any dividend money. In their 1949 income tax return the petitioners listed on Schedule D (1) - Capital Assets, Short Term Losses, "Amount due from Friend W. Cole, $5,850.00," and attached a *24 photostat copy of the father's will. On page 2 of the return, instead of limiting the deduction to $1,000, the total of $5,850 was deducted in full. In the deficiency notice the respondent determined that the bad debt deduction in the amount of $5,850, claimed by petitioners, was not allowable under any of the provisions of the Internal Revenue Code of 1939. No deduction was claimed prior to 1949 on account of any such indebtedness. If there was a debt owing to petitioner by his father, as claimed, the debt became worthless prior to 1949, the taxable year herein. Opinion The respondent contends that the petitioners have failed to prove that an indebtedness existed between petitioner and his father, and that if such indebtedness did exist, petitioner has failed to prove that it became worthless in the taxable year. The acknowledgment of indebtedness was in 1929 or 1930, when the will was delivered to petitioner's brother, but the evidence shows that any debt which may have existed was worthless long prior to 1949, when petitioner's father died, and the respondent did not err in disallowing the bad debt deduction claimed by petitioners for that year. Decision will be entered *25 for the respondent.